IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Case No. 22-cv-01790-PAB-SBP

YOEL LODOS,

    Plaintiff,

v.

EMPIRE TOWING CORP., and
BERNARD ESMEL ARRITOLA ALONSO, an individual,

    Defendants.

_____

**ORDER**
_____

This matter is before the Court on plaintiff's Motion to Amend Order [Docket No. 63]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I.  BACKGROUND

### A.  Procedural History

Plaintiff Yoel Lodos filed this lawsuit on July 19, 2022. Docket No. 1. Mr. Lodos asserts four claims: (1) violations of the overtime and recordkeeping provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.; and (2) violations of the Colorado Wage Act ("CWA"), Colo. Rev. Stat. § 8-4-101, *et seq*., and the Colorado Minimum Wage Act ("CMWA"), § 8-6-101, *et seq*.[1] *Id*. at 5–9.

---

[1] The amended complaint asserts FLSA and Colorado Wage Act retaliation claims. Docket No. 1 at 9–11. However, Mr. Lodos notes that he "does not seek damages related to his retaliation claims, effectively withdrawing them without prejudice." Docket No. 58 at 12.

On September 1, 2022, Mr. Lodos filed an affidavit of service for defendant Empire Towing Corporation ("Empire Towing"). Docket No. 7. On October 19, 2022, the Clerk of the Court entered default against Empire Towing. Docket No. 14.

On November 18, 2022, Mr. Lodos filed a motion for substitute service, requesting permission to serve defendant Bernard Esmel Arritola Alonso ("Mr. Arritola Alonso") pursuant to Colo. R. Civ. P. 4(f). Docket No. 17 at 3-5. Mr. Lodos stated that his process servers attempted to effectuate personal service on Mr. Arritola Alonso eleven times at three different locations, but all attempts were unsuccessful. *Id*. at 2; *see also* Docket No. 17-1 at 2, ¶¶ 7-16. Mr. Lodos requested permission to serve Mr. Arritola Alonso by (1) emailing a copy of the complaint to Mr. Arritola Alonso's last known email addresses: bernard-25@live.com, rockypup69@yahoo.com, and empiretowingcorp@gmail.com; (2) mailing a copy of the complaint to Mr. Arritola Alonso at the following addresses: 1287 South 8 Ave Unit K-385, Brighton, CO 80601; 17410 E 120th Ave, Commerce City, CO 80022; and 19223 NW 53rd Circle Pl, Miami Gardens, FL 33055-613; and (3) via publication in a local newspaper. Docket No. 17 at 5. On January 26, 2023, the magistrate judge granted Mr. Lodos's motion for substitute service. Docket No. 25; *see also* Docket No. 35 (order approving the language to be published in the Brighton Standard Blade newspaper for a minimum of three consecutive weeks).

On February 7, 2023, counsel of Mr. Lodos filed a Certificate of Alternate Service that stated he (1) emailed the complaint to bernard-25@live.com, rockypup69@yahoo.com, and empiretowingcorp@gmail.com; and (2) mailed the complaint to 1287 South 8 Ave Unit K-385, Brighton, CO 80601; 17410 E 120th Ave,

2

Commerce City, CO 80022; and 19223 NW 53rd Circle Pl, Miami Gardens, FL 33055-613.  Docket No. 26 at 1.  On March 13, 2023, Mr. Lodos filed an affidavit of publication signed by Linda Shapley, the publisher of the Brighton Standard Blade, certifying that the newspaper published a notice to Mr. Arritola Alonso that this suit has been filed against him and that he must respond to the complaint by March 30, 2023 for three successive weeks, beginning on February 23, 2023 and ending on March 9, 2023.  Docket No. 38.  On June 15, 2023, the Clerk of the Court entered default against Mr. Arritola Alonso.  Docket No. 42.

On July 13, 2023, Mr. Lodos filed a motion for default judgment against Empire Towing and Mr. Arritola Alonso.  Docket No. 45.  On January 9, 2024, the Court denied Mr. Lodos's motion for default judgment against both defendants.  Docket No. 46.  The Court found that Mr. Lodos did not properly serve Empire Towing because an employee of Empire Towing was served, rather than an authorized individual under Fed. Riv. Civ. P. 4(h)(1)(B) or Colo. R. Civ. P. 4(e)(4).  *Id*. at 9–12.  As to Mr. Arritola Alonso, the Court found that Mr. Lodos did not proceed properly under Colo. R. Civ. P. 4(f) to obtain substitute service of process because he did not identify a substituted person who could receive service of process on behalf of Mr. Arritola Alonso.  *Id*. at 14–15.  The Court denied Mr. Lodos's motion without prejudice and instructed Mr. Lodos to serve Empire Towing and Mr. Arritola Alonso pursuant to Fed. R. Civ. P. 4.  *Id*. at 12, 15–16.

On February 12, 2024, Mr. Lodos filed an affidavit of service for Mr. Arritola Alonso, asserting that Marlene Infante, co-resident and cousin of Mr. Arritola Alonso, received service of process at Mr. Arritola's Alonso's usual abode at 10145 NW 9th Street Circle, Apt 204, Miami, Florida 33172.  Docket No. 49.  On February 14, 2024,

3

Mr. Lodos certified that he mailed the complaint and summons to Empire Towing at its principal mailing address via Certified Mail, return receipt requested.  Docket No. 50.  On February 27, 2024, the Clerk of Court entered default against Empire Towing.  Docket No. 52.  On March 14, 2024, the Clerk of Court entered default against Mr. Arritola Alonso.  Docket No. 56.  On June 28, 2024, Mr. Lodos filed his second motion for default judgment against Mr. Arritola Alonso and Empire Towing.  Docket No. 58.  On February 21, 2025, the Court denied Mr. Lodos's second motion for default judgment because Mr. Lodos did not sufficiently allege that Mr. Arritola Alonso was served at his usual place of abode (the "February 21, 2025 Order").  Docket No. 59 at 14-15.

On May 2, 2025, Mr. Lodos filed a motion asking the Court to amend its February 21, 2025 Order, arguing that Mr. Arritola Alonso has now been properly served.  Docket No. 63 at 1.  Mr. Lodos represents that, on April 18, 2025, Cristina Suarez of Miami-Dade Sheriff's Office served Mr. Arritola Alonso "by personally serving him in federal prison in Miami, where he is currently awaiting trial."  *Id.* at 2.

B.  **Factual Allegations**[2]

Mr. Lodos worked as a tow truck driver and dispatcher for Empire Towing from August 1, 2021 to December 20, 2021.  Docket No. 1 at 4, ¶ 18.  Mr. Arritola Alonso is the owner and registered agent of Empire Towing.  *Id*. at 2-3, ¶¶ 7, 14.  As the owner of the company, Mr. Arritola Alonso had the ability to hire and fire employees, set rates of

---

[2] Because of the Clerk of Court's entry of default against both defendants, *see* Docket Nos. 52, 65, the well-pleaded allegations in plaintiff's complaint, Docket No. 1, are deemed admitted.  *See Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003).

4

pay, and set employees' schedules.  *Id*. at 3-4, ¶ 15.  Mr. Arritola Alonso supervised Mr. Lodos's daily activities.  *Id*.

Mr. Lodos submits the declaration of his counsel in which he states that the Colorado Secretary of State lists Mr. Arritola Alonso as the registered agent for Empire Towing with an address of 1287 S. 8th Ave Unit K-85, Brighton, CO 80601.  Docket No. 17-1 at 2, ¶ 7.  However, Mr. Lodos submits an affidavit of nonservice from process server Cindy Parrino in which Ms. Parrino notes that she was informed by the occupant of 1287 S. 8th Ave that Mr. Arritola Alonso no longer resides there.  Docket No. 13.  In his declaration, Mr. Lodos's counsel states that Empire Towing parks its tow trucks at a plot of land with the address 17410 E. 120th Ave, Commerce City, CO 80022.  Docket No. 17-1 at 2, ¶ 11.  Mr. Lodos's counsel further states that the Colorado Secretary of State lists Empire Towing's principal mailing street office as 19223 N.W. 53rd Circle Pl., Miami Gardens, FL 33055-613.  *Id.*, ¶ 13.

Mr. Lodos's pay structure included a thirty percent commission on the cost of each job he completed.  Docket No. 1 at 1, ¶ 1.  Empire Towing had no official time-tracking methods to record the hours worked by each employee.  *Id*. at 4, ¶ 20.  Mr. Lodos was not expected to record his time worked for payroll purposes.  *Id*.  Mr. Lodos estimates that he typically worked about 80 hours per week because he worked seven days per week from approximately 7:00 a.m. to 7:00 p.m.  *Id*., ¶¶ 21-22.  In addition to towing cars, Mr. Lodos also responded to calls on the company's dispatch phone during and after work hours and coordinated towing based on those calls.  *Id*., ¶ 23.

Defendants did not pay Mr. Lodos any overtime when he worked more than 40 hours per week and did not pay Mr. Lodos for responding to dispatch calls.  *Id*. at 4-5,

¶¶ 24, 27.  Defendants deducted $800 from Mr. Lodos's first paycheck as a "deposit" in case he damaged any equipment; however, defendants did not return the deposit to Mr. Lodos upon his separation from the company.  *Id*., ¶ 25.  Defendants did not provide Mr. Lodos any meal or rest breaks.  *Id*. at 5, ¶¶ 28-29.  Defendants did not pay Mr. Lodos his earned commissions for Mr. Lodos's final two and a half weeks of work.  *Id*. at 1, ¶ 1.  Mr. Lodos, through counsel, issued a demand for payment of his unpaid wages to Mr. Arritola Alonso.  *Id*. at 10, ¶ 64.

## II. LEGAL STANDARD

In order to obtain a judgment by default, a party must follow the two-step process described in Fed. R. Civ. P. 55.  First, the party must seek an entry of default from the Clerk of the Court under Rule 55(a).  Second, after default has been entered by the Clerk, the party must seek judgment under the strictures of Rule 55(b).  *See Williams v. Smithson*, 57 F.3d 1081, 1995 WL 365988, at *1 (10th Cir. June 20, 1995) (unpublished table decision) (citing *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)).

The decision to enter default judgment is "committed to the district court's sound discretion."  *Olcott*, 327 F.3d at 1124 (citation omitted).  In exercising that discretion, the Court considers that "[s]trong policies favor resolution of disputes on their merits."  *In re Rains*, 946 F.2d 731, 732 (10th Cir. 1991) (quotation and citations omitted).  "The default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party."  *Id.*  It serves to protect a plaintiff against "interminable delay and continued uncertainty as to his rights."  *Id.* at 733.  When "ruling on a motion for default judgment, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default

6

judgment." *Seme v. E&H Prof'l Sec. Co., Inc.*, No. 08-cv-01569-RPM-KMT, 2010 WL 1553786, at *11 (D. Colo. Mar. 19, 2010).

A party may not simply sit out the litigation without consequence. *See Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444-45 (10th Cir. 1983) ("a workable system of justice requires that litigants not be free to appear at their pleasure. We therefore must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts' rules of procedure. The threat of judgment by default serves as an incentive to meet this standard."). One such consequence is that, upon the entry of default against a defendant, the well-pleaded allegations in the complaint are deemed admitted. *See* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2688.1 (4th ed., 2023 rev.). "Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Id*. A court need not accept conclusory allegations. *Moffett v. Halliburton Energy Servs., Inc.,* 291 F.3d 1227, 1232 (10th Cir. 2002). Although "[s]pecific facts are not necessary" in order to state a claim, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal

7

theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quotation and citation omitted).

## III.   ANALYSIS

### A.   Jurisdiction

Before addressing the merits of Mr. Lodos's motion for default judgment, the Court must determine whether it has subject matter jurisdiction over this case and personal jurisdiction over Empire Towing and Mr. Arritola Alonso. *See Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997) (holding that "a district court must determine whether it has jurisdiction over the defendant before entering judgment by default against a party who has not appeared in the case"). As the Court found in its February 21, 2025 Order, it has subject matter jurisdiction over this action and has personal jurisdiction over Empire Towing. Docket No. 59 at 8-9, 10-14. Thus, the Court will consider whether it has personal jurisdiction over Mr. Arritola Alonso.

The plaintiff bears the burden of establishing personal jurisdiction. *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988). The plaintiff can satisfy his burden by making a *prima facie* showing. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). The court will accept the well-pled allegations of the complaint as true in determining whether plaintiff has made a *prima facie* showing that personal jurisdiction exists. *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). If the presence or absence of personal jurisdiction can be established by reference to the complaint, the court need not look further. *Id.* The

plaintiff, however, may also make this *prima facie* showing by putting forth evidence that, if proven to be true, would support jurisdiction over the defendant. *Id.*

"In determining whether a federal court has personal jurisdiction over a defendant, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)). The Colorado long-arm statute, Colo. Rev. Stat. § 13-1-124, has been construed to extend jurisdiction to the full extent permitted by the Constitution, so the jurisdictional analysis here reduces to a single inquiry of whether jurisdiction offends due process. *See Dudnikov*, 514 F.3d at 1070; *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005). Personal jurisdiction comports with due process where a defendant has minimum contacts with the forum state and where those contacts are such that assuming jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Minimum contacts may be established under the doctrines of general jurisdiction or specific jurisdiction. *Howarth v. TCER, LLC*, 20-cv-03230-PAB-KMT, 2021 WL 4775270, at *2 (D. Colo. Oct. 13, 2021).

Furthermore, proper service is a jurisdictional prerequisite to litigation. *Jenkins v. City of Topeka*, 136 F.3d 1274, 1275 (10th Cir. 1998) ("Effectuation of service is a precondition to suit."). Without proper service, the court lacks personal jurisdiction over a defendant. *Okla. Radio Assocs. v. Fed. Deposit Ins. Corp.*, 969 F.2d 940, 943 (10th Cir. 1992).

9

The Federal Rules of Civil Procedure provide that an individual may be served by "(A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2). Alternatively, an individual may be served "following state law" for either the state where the district court is located or where service is made. Fed. R. Civ. P. 4(e)(1).

Mr. Lodos submits a Return of Service for Mr. Arritola Alonso that states service was effected by Deputy Sheriff Cristina Suarez of the Miami-Dade Sheriff's Office. Docket No. 62. Deputy Sheriff Suarez represents that she served Mr. Arritola Alonso personally at Miami Federal Detention Center, located at 33 N.E. 4th Street, Miami, Florida. *Id.* at 1. The Court finds that Mr. Lodos has properly served Mr. Arritola Alonso. Furthermore, the Court finds that it has personal jurisdiction over Mr. Arritola Alonso. The complaint alleges that Mr. Arritola Alonso's company, Empire Towing, is based in Colorado and that Mr. Lodos worked for Empire Towing in Colorado. Docket No. 1 at 2, 3, 4-5, ¶¶ 7, 14, 17-30; *see Schuck v. Littleton Auto Repair*, LLC, 23-cv-03303-SKC-TPO, 2026 WL 301717, at *2 (D. Colo. Jan. 15, 2026) (finding that the court had personal jurisdiction over defendants where the "well-pleaded allegations" showed that defendants "reside/and or conduct business in Colorado" and defendants' company was based in Colorado).

10

B. **Merits**

1. ***Joint and Several Liability***

"The FLSA and CWA recognize the possibility that an employee may have more than one employer, and in such instances the employers may be held jointly and severally liable." *Kimes v. Alshawy*, No. 23-cv-00082-RMR-MDB, 2024 WL 2864147, at *3 (D. Colo. May 20, 2024). The FLSA and the CWA allow individuals to be considered "employers." *See Gomez v. Timberline Custom Builders, LLC*, No. 23-cv-01510-RMR, 2025 WL 2613741, at *3 (D. Colo. Sept. 10, 2025). To determine whether an individual can be considered an employer under the FLSA and CWA, courts consider the following factors: "whether the alleged employer: (1) has the power to hire and fire the employee; (2) supervises and controls the employee's work schedule or conditions of employment; (3) determines the rate and method of payment; and (4) maintains employment records." *See id.*

The complaint alleges that Empire Towing and Mr. Arritola Alonso were Mr. Lodos's employers. Docket No. 1 at 3, 4, ¶¶ 11, 16. Mr. Lodos alleges that Mr. Arritola Alonso is the owner of Empire Towing and "exercised substantial control over the functions of the company's employees." *Id.* at 3, ¶¶ 14-15. Specifically, Mr. Arritola Alonso "had the ability and authority to hire and fire employees, set rates of pay, and set employee schedules." *Id.* at 3-4, ¶ 15. Mr. Lodos alleges that Mr. Arritola Alonso was "very involved in the day-to-day operations of the company and supervised and directed Plaintiff's daily activities." *Id.* Accordingly, the Court finds that Mr. Arritola Alonso was Mr. Lodos's employer and is therefore jointly and severally liable with Empire Towing for violations of the FLSA and CWA. *See Gomez,* 2025 WL 2613741, at *4 (holding that

11

the individual defendant was an employer under the FLSA and CWA because he was the "person who hired [plaintiff], set his rate of pay and work schedule, and supervised and instructed him daily").

### 2. FLSA Claim

Mr. Lodos alleges that defendants failed to pay him overtime wages and maintain proper records in violation of the FLSA.  Docket No. 1 at 5, ¶¶ 32-33.  To establish liability under the FLSA, a plaintiff must show that:

> (1) he was employed by the defendant during the relevant time; (2) that the plaintiff worked and the defendant did not appropriately compensate the plaintiff for the time worked; and (3) in the plaintiff's work for the defendant, he was engaged in commerce or the production of goods for commerce, or he was employed by an enterprise engaged in commerce or the production of goods for commerce that had annual gross sales of at least $500,000.

*See Gomez*, 2025 WL 2613741, at *4.  The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  Furthermore, under the FLSA, "[e]very employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him." 29 U.S.C. § 211(c).

The complaint alleges that Mr. Lodos worked for Empire Towing as a tow truck driver and dispatcher from August 1, 2021 to December 20, 2021.  Docket No. 1 at 4, ¶ 18.  Mr. Lodos estimates that he generally worked 80 hours per week.  *Id.*, ¶ 21. When Mr. Lodos worked more than 40 hours per week, defendant "did not pay Plaintiff

anything extra." *Id.*, ¶ 24. Mr. Lodos alleges that he was "not expected to record his time worked for payroll or compensation purposes" and there were "no official time-tracking methods used by the company to track or record employees' hours worked." *Id.*, ¶ 20. Mr. Lodos alleges that Empire Towing was "engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a)" and had an annual gross revenue that exceeded $500,000. *Id.* at 2-3, ¶¶ 8-9. Accordingly, the Court finds that Mr. Lodos has sufficiently alleged violations of the FLSA against defendants.[3]

### 3. CWA and CMWA Claims

Mr. Lodos alleges that defendants failed to pay all earned wages and compensation, made improper deductions from his wages, denied him mandatory rest periods, failed to pay wages in response to his demand letter, and failed to maintain proper records in violation of the CWA and CMWA. *Id.* at 6-9.

Under the CWA, "the wages or compensation for labor or service earned, vested, determinable, and unpaid at the time of such discharge is due and payable immediately." Colo. Rev. Stat. § 8-4-109(1)(a). The CMWA is implemented through the

---

[3] Mr. Lodos alleges that defendants' violations of the FLSA were willful pursuant to 29 U.S.C. § 255(a). Docket No. 1 at 6, ¶¶ 34-37. Under § 255(a), if an FLSA violation is willful, the statute of limitations period is three years. *See* 29 U.S.C. § 255(a). Furthermore, because defendants have not appeared, the statute of limitations defense is waived. *See Kimes*, 2024 WL 2864147, at *3 ("to the extent a statute of limitations defense is applicable, the statute of limitations defense is an affirmative defense and is subject to waiver" where "Defendant has not responded at all in this matter, much less raised any applicable affirmative defenses") (internal quotation and citation omitted).

Colorado Overtime and Minimum Pay Standards ("COMPS") Orders.  *See Vassel v. Littleton Auto Repair LLC*, No. 22-cv-1229-RMR, 2024 WL 709800, at *5 (D. Colo. Feb. 21, 2024).  The COMPS Orders require "employers to provide nonexempt employees an uninterrupted, duty-free 30-minute meal periods for shifts over 5 hours and a paid 10-minute break for each 4 hours of work, or major fractions thereof."  *Id.*  The CMWA "expressly authorizes a private right of action for rest period or meal break violations where the employee seeks to recover for the time he was entitled to receive, but the employer did not provide, a rest period or meal break."  *See id.*

Mr. Lodos alleges that defendants failed to pay the minimum wage he was owed while working in Colorado and the City and County of Denver, Docket No. 1 at 7, ¶¶ 41-42; that defendants did not pay him overtime premiums when he worked in excess of 40 hours in a week, *id.*, ¶ 44; that defendants withheld $800 of Mr. Lodos's initial pay as a "deposit" to be held in case of damage, but that defendants did not return this deposit, *id.* at 8, ¶ 52; and that defendants did not provide him a 30-minute duty-free paid meal break for each of the five hours Mr. Lodos worked and that they did not provide him with a 10 minute duty-free paid rest break for each of the four hours Mr. Lodos worked.  *Id.*, ¶¶ 53-54.  Mr. Lodos alleges that he issued defendants a Demand for Payment of Wages on March 29, 2022.  *Id.*, ¶ 55.  Mr. Lodos issued an additional copy of the demand on May 23, 2022.  *Id.*, ¶ 56.  Defendants did not tender payment in response to the demand.  *Id.* at 9, ¶ 57.  Mr. Lodos alleges that defendants failed to maintain accurate records for each employee and failed to provide a pay stub or itemized earning

statement. *Id.*, ¶¶ 60-61.  Accordingly, the Court finds that Mr. Lodos has sufficiently alleged defendants' violations of the CWA and CMWA.[4]

## C. Damages

Default judgment requires the Court to ascertain the amount of damages.  *See Reg'l. Dist. Council v. Mile High Rodbusters, Inc.,* 82 F. Supp. 3d 1235, 1243 (D. Colo. 2015) (citing *Herzfeld v. Parker*, 100 F.R.D. 770, 773 (D. Colo. 1984)).  The court must hold a hearing on the damages claimed before entering default judgment, unless "the amount claimed is a liquidated sum or one capable of mathematical calculation."  *Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985).  "Actual proof must support any default judgment for money damages where there is an uncertainty as to the amount."  *Mile High Rodbusters, Inc.,* 82 F. Supp. 3d at 1243 (citing *Klapprott v. United States*, 335 U.S. 601, 611–12 (1949)).  "While the Court accepts the well-pleaded facts of the complaint as true on a motion for default judgment, allegations relating to the amount of damages are generally not accepted as true."  *First Home Bank v. USA Pro Roofing & Constr., LLC*, No. 18-cv-00965-MSK-STV, 2018 WL 6990394, at *3 (D. Colo. Oct. 19, 2018); *see also United States v. Craighead*, 176 F. App'x 922, 925 (10th Cir. 2006) (unpublished).  "In making an independent determination of the amount of damages, the court may rely on detailed affidavits or documentary evidence."  *BMO Harris Bank N.A. v. Marjanovic*, No. 19-cv-02945-CMA-KMT, 2021 WL 307501, at *4 (D. Colo. Jan. 29, 2021) (citations and quotation omitted).

---

[4] The Court declines to find that defendants' violation of the CWA was willful as the complaint contains no allegations in support of that proposition.  The complaint only alleges that defendants' violation of the FLSA was willful, *see* Docket No. 1 at 6, ¶¶ 34-37, as opposed to providing plausible factual support for a willful CWA violation.

15

Under the FLSA, "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Mr. Lodos states that his unpaid wages amount to $27,450. Docket No. 58 at 15. Mr. Lodos states that defendants did not pay him $1,250 in commissions that he earned for tows completed during the final two and a half weeks of his employment. *Id.* at 14. Furthermore, defendants withheld the $800 deposit. *Id.* Regarding overtime pay, Mr. Lodos states that his weekly base pay rate was $800; thus, his regular hourly rate of pay was $20 per hour and his overtime pay was $30 per hour. *Id.* Mr. Lodos states that he worked 80 hours per week on average and thus worked 40 hours of overtime per week. *Id.* Because Mr. Lodos worked for defendants for approximately 20 work weeks, he worked a total of 800 hours of overtime. *Id.* Therefore, at his overtime rate of $30 per hour, Mr. Lodos states that he is entitled to a total of $24,000. *Id.* Mr. Lodos states that he generally worked 12 hours per day and did not receive a 10-minute rest break for every four hours of work. *Id.* Thus, Mr. Lodos was owed a 30-minute rest break each day, for each of the 140 days he worked, for a total of 70 hours. At his hourly rate of $20, Mr. Lodos states he is owed $1,400 for his rest breaks. *Id.* Mr. Lodos's calculations are supported by his declaration. *See* Docket No. 58-2. Accordingly, the Court finds that Mr. Lodos is entitled to $27,450 in actual damages.[5]

---

[5] Mr. Lodos does not provide calculations for any wages or compensation he is owed in connection to missed meal breaks or payments that fall below the minimum wage. *See* Docket No. 58 at 14.

16

Because Mr. Lodos is owed $24,000 in unpaid overtime wages, he is also entitled to liquidated damages under the FLSA in the same amount.  *See* 29 U.S.C. § 216(b).

Mr. Lodos seeks statutory penalties under the CWA.  *See* Docket No. 58 at 15.  A plaintiff is "entitled to recover both FLSA liquidated damages and CWA statutory penalties."  *See Gomez*, 2025 WL 2613741, at *4.  The version of the CWA that was in effect at the time that Mr. Lodos sent his demand letter provided that, if an employer failed to pay the employee's wages or compensation within 14 days after a written demand is made, then the employer is liable for a penalty equal to "[o]ne hundred twenty-five percent of that amount of such wages or compensation up to and including seven thousand five hundred dollars" and "[f]ifty percent of that amount of such wages or compensation that exceed seven thousand five hundred dollars."  *See* Colo. Rev. Stat. § 8-4-109(3)(b)(I), (II) (effective January 1, 2015).  Mr. Lodos seeks $27,450 in unpaid back wages, which results in a penalty of $17,475 under the CWA.  Docket No. 58 at 15.  The Court finds that Mr. Lodos is entitled to a CWA penalty in this amount.

Mr. Lodos seeks prejudgment interest on the damages owed for his rest breaks, deduction, and final commissions.  Docket No. 58 at 13.  The Court "may not award both liquidated damages under the FLSA and prejudgment interest."  *Peralta v. Taco Mex III Inc.*, No. 17-cv-02659-RM-NRN, 2018 WL 11624917, at *9 (D. Colo. Sept. 28, 2018).  Mr. Lodos argues that he is "seeking FLSA liquidated damages only on his overtime claim" and that the "remaining owed wages . . . have not received any liquidated damages or interest to offset the time value of that money."  Docket No. 58 at 13.  Plaintiff contends that he is "entitled to recover, on his backpay damages only, prejudgment interest on the difference between the (higher) computed wage rates owed

17

pursuant to the CWA and the (lower) federal minimum wage rate." *Id.* "[C]ourts in this district have declined to award prejudgment interest altogether where both FLSA liquidated damages and CWA statutory damages were granted." *Gomez,* 2025 WL 2613741, at *7. Mr. Lodos cites no authority for his argument that he is entitled to prejudgment interest. *See, e.g.*, *Conejo v. Malwitz*, No. 24-cv-00232-CNS-NRN, 2025 WL 3516444, at *6 (D. Colo. Oct. 24, 2025) (rejecting identical argument); *Gomez,* 2025 WL 2613741, at *7 (same). Because "like FLSA liquidated damages, prejudgment interest also is meant to compensate the wronged party for being deprived of the monetary value of his loss from the time of the loss to the payment of the judgment," the Court declines to award prejudgment interest. *See Evans v. Loveland Auto. Invs., Inc.,* 632 F. App'x 496, 499 (10th Cir. 2015) (unpublished) (internal quotations and citation omitted).

## IV. CONCLUSION

It is therefore

**ORDERED** that plaintiff's Motion to Amend Order [Docket No. 63] is **GRANTED in part and DENIED in part**. It is further

**ORDERED** that judgment shall enter in favor of plaintiff Yoel Lodos and against defendants Empire Towing Corporation and Bernard Esmel Arritola Alonso jointly and severally in the amounts of $27,450 for actual damage; $24,000 in liquidated damages under the FLSA; and $17,475 in statutory penalties under the CWA. It is further

**ORDERED** that post-judgment interest shall accrue pursuant to 28 U.S.C. § 1961. It is further

**ORDERED** that this case is closed.

DATED March 11, 2026.

BY THE COURT:

_____
PHILIP A. BRIMMER
United States District Judge